AF Approval ________ FOR JH                                                Chief Approval ________

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 5:23-cr-108-TPB-PRL

DANIELLE JANE LILES

**PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, Danielle Jane Liles, and the attorney for the defendant, Andrew T. Pozzuto, Esquire, mutually agree as follows:

**A. Particularized Terms**

1. Counts Pleading To

The defendant shall enter a plea of guilty to Counts One through Eight of the Indictment. Counts One through Eight charge the defendant with wire fraud, in violation of 18 U.S.C. § 1343.

2. Maximum Penalties

Counts One through Eight carry a maximum sentence of not more than 20 years' imprisonment, not more than three years' supervised release, not more than a $250,000 fine, or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greater, and

a special assessment of $100. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3. Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty. The elements of Counts One through Eight are:

First: Defendant knowingly devised or participated in a scheme to defraud, or to obtain money or property by using false pretenses, representations, or promises;

Second: the false pretenses, representations, or promises were about a material fact;

Third: Defendant acted with the intent to defraud; and

Fourth: Defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud

4. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

5. Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to Silver River Mentoring and Instruction in the amount of $766,553.54.

6. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, at least $616,793.43, which represents the proceeds of the offenses charged in Counts One through Eight, in proceeds the defendant

admits she obtained, as the result of the commission of the offenses to which the defendant is pleading guilty. The defendant acknowledges and agrees that: (1) the defendant obtained this amount as a result of the commission of the offenses, and (2) as a result of the acts and omissions of the defendant, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offenses of conviction. The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offenses and consents to the entry of the forfeiture order into the Treasury Offset Program. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for

production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United

States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

**B. <u>Standard Terms and Conditions</u>**

1. <u>Restitution, Special Assessment and Fine</u>

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution

to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the

conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United

States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which she has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly

waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the

attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea

and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 28 day of November 2023.

ROGER B. HANDBERG
United States Attorney

Danielle Jane Liles
Defendant

Hannah Nowalk
Assistant United States Attorney

Andrew T. Pozzuto
Attorney for Defendant

Robert E. Bodnar, Jr.
Assistant United States Attorney
Chief, Ocala Division

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 5:23-cr-108-TPB-PRL

DANIELLE JANE LILES

PERSONALIZATION OF ELEMENTS

Do you admit that between on or about January 11, 2016, and on or about April 10, 2023, you knowingly devised a scheme to defraud?

Do you admit that it was part of your scheme that you were employed with Silver River Mentoring and Instruction and tasked with handling financial responsibilities to include payroll, bank statements, and bank reconciliation?

Do you admit that it was further part of your scheme that you issued yourself 137 unauthorized paychecks by logging the fraudulent amounts into Silver River Mentoring and Instruction's accounting software?

Do you admit that you acted with the intent to defraud Silver River Mentoring and Instruction by receiving paychecks to which you were not entitled?

Do you admit that your scheme caused the eight electronic wire transfers listed in the indictment to be transmitted through interstate commerce into your bank account in the Middle District of Florida?

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 5:23-cr-108-TPB-PRL

DANIELLE JANE LILES

FACTUAL BASIS

Danielle Jane Liles began working at Silver River Mentoring and Instruction ("SRMI") in approximately 2001. SRMI is contracted by the Marion County School Board as a public, alternative school for middle and high school students who have encountered problems in the public school setting or who have been expelled with services from the Marion County School System. This program focuses on behavior modification. SRMI has three locations to serve at-risk youth in both Marion and Citrus counties, in the Middle District of Florida.

SRMI receives funding by the Marion County School Board and Citrus County School Board, and all three campuses receive Title 1 funding. Title 1 is a federally funded program that provides financial assistance to school districts and schools with high numbers or high percentages of children from low income families to ensure that all children have a fair, equal, and significant opportunity to obtain quality education and at a minimum,

proficiency on challenging State academic achievement standards and state academic assessments.

Liles's job responsibilities at SRMI included payroll, bank statements, and bank reconciliation. SRMI utilized PeachTree accounting software for payroll services. Only Liles and a Certified Public Accountant ("CPA"), had user access to this software. Liles responsibility was to log the payroll into the system. After 2014 or 2015, SRMI transitioned away from having the Executive Director physically sign every paycheck. Instead, SRMI used direct deposit, which did not require checks to have physical signatures. This process provided Liles with complete control over the payroll with the CPA as an auditor.

In 2019, the CPA passed away. There had been no financial audits completed before 2019. In December 2022, a peer financial review was completed. SRMI received recommendations to implement for their accounting. One of the recommendations was to complete reviews of monthly financial reports. On April 21, 2023, the Executive Director met with Liles at the SRMI's Citrus County campus to begin reviewing the monthly financials. Liles asked the Executive Director to speak with her behind closed doors. She told him that she had been stealing from the company. She advised, "I've been paying myself extra money."

Liles told the Executive Director that she had become addicted to stealing the money. She estimated that she had stolen between $300,000 and $500,000 over the course of five years. Liles did not state what she had spent the money on, but she said she no longer had any of the money.

The Executive Director asked Liles to print out the payroll and show him the fraudulent paychecks she received. She complied. She printed records from PeachTree showing the paychecks that were directly deposited through electronic wire transfers into her bank account in the Middle District of Florida. She highlighted the unauthorized paychecks – 130 wire transfers for a total loss of $754,333.48.

SRMI had an accountant review the payroll in comparison to Liles's contracted salary to ascertain which paychecks were unauthorized. The accountant found that between January 11, 2016, and April 10, 2023, Liles issued herself a total of 137 paychecks that were either outside of her normal paycheck or added money to her actual wage. SRMI suffered a total loss of $766,553.54.

As paychecks are normally distributed, insurance and other deductions were made to Liles's paycheck before an amount was wired into her bank account. Liles received $616,793.43 in unauthorized paychecks. Liles received the paychecks through Automated Clearinghouse Services ("ACH")

transactions, which are electronic wire transfers from one bank to another bank. All ACH transfers pass through the Federal Reserve Bank. Florida does not have a Federal Reserve bank. The Federal Reserve bank for Florida Credit Union ACH transfers is in Atlanta, Georgia. Thus, the wire transfers had to affect interstate commerce for Liles to receive the paychecks into her Florida Credit Union account from SRMI's Truist Bank account.

As part of the scheme, Liles caused the following fraudulent wire transfers to occur (as reflected in the indictment):

| DATE OF WIRE | DESCRIPTION OF WIRE |
|---|---|
| October 21, 2016 | Wire deposit in the amount of $5,548.51 from SRMI to Liles's Florida Credit Union account ending in 2925. |
| April 17, 2017 | Wire deposit in the amount of $4,489.41 from SRMI to Liles's Florida Credit Union account ending in 2925. |
| November 29, 2018 | Wire deposit in the amount of $6,142.37 from SRMI to Liles's Florida Credit Union account ending in 2925. |
| July 31, 2019 | Wire deposit in the amount of $6,980.05 from SRMI to Liles's Florida Credit Union account ending in 2925. |
| July 27, 2020 | Wire deposit in the amount of $6,151.39 from SRMI to Liles's Florida Credit Union account ending in 2925. |
| November 2, 2021 | Wire deposit in the amount of $9,821.42 from SRMI to Liles's Florida Credit Union account ending in 2925. |
| December 21, 2022 | Wire deposit in the amount of $6,057.93 from SRMI to Liles's Florida Credit Union account ending in 2925. |

| DATE OF WIRE | DESCRIPTION OF WIRE |
|---|---|
| February 8, 2023 | Wire deposit in the amount of $6,363.85 from SRMI to Liles's Florida Credit Union account ending in 2925. |